*72RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0166P (6th Cir.)
File Name: 01a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

JAY D. SCOTT,
    *Petitioner-Appellant,*

    *v.*

BETTY MITCHELL,
    *Respondent-Appellee.*

No. 01-3511

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 95-02037—Kathleen McDonald O'Malley,
District Judge.

Submitted: May 15, 2001

Decided and Filed: May 15, 2001

Before: BOGGS, SILER, and BATCHELDER, Circuit
Judges.

—————————

**COUNSEL**

**ON BRIEF:** Timothy F. Sweeney, Cleveland, Ohio, John S.
Pyle, GOLD, ROTATORI, SCHWARTZ & GIBBONS,
Cleveland, Ohio, for Appellant. David M. Gormley, OFFICE
OF THE ATTORNEY GENERAL OF OHIO, Columbus,
Ohio, Stuart A. Cole, ASSISTANT ATTORNEY GENERAL,
Columbus, Ohio, for Appellee.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.  This matter is before us on petitioner Jay D. Scott's motion for a stay of his execution, scheduled for 9:00 p.m. on this date, and on Scott's appeal from the district court's denial of his supplemental petition for habeas corpus.  The district court denied Scott's supplemental petition because it concluded that although the claims raised therein were not procedurally barred under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244, those claims were without merit.  We conclude that Scott's third claim—that execution of the severely mentally ill is prohibited by the Eighth Amendment—is procedurally barred.  We further conclude that his first and second claims—that Ohio's procedures for determining whether he is competent to be executed and the Ohio courts' application of those procedures to him violated his rights under the Eighth Amendment and denied him due process, and that the *Ford v. Wainwright* test for determining competency to be executed is inadequate in light of contemporary standards of decency—may be considered on their merits because they were not ripe at the time Scott filed his initial habeas petition.  For the reasons that follow, we conclude that neither of those claims is meritorious, and we will therefore AFFIRM the judgment of the district court denying the writ.  Finally, we DENY the motion for stay of Scott's execution.

## I. Procedural Background

Jay Scott was convicted by an Ohio jury of aggravated robbery and aggravated murder on March 21, 1984, and sentenced to death.  He pursued all of his state court avenues of direct appeal and collateral review without success, and the Ohio Supreme Court scheduled his execution for October 25, 1995. Scott immediately filed in federal district court a notice of his intent to file a petition for habeas corpus. The petition, filed on February 2, 1996, was ultimately denied; the Supreme

state.  Ohio's statute does not contemplate burden shifting to establish probable cause.  Rather, the statute directs the court to examine the evidence and to make a finding regarding whether there is  probable cause to believe that a convict meets the *Ford* standard.  Here, Dr. Mossman testified that Scott suffers from schizophrenia, but he did not state that Scott is unable to "understand the nature of the death penalty and why it was imposed upon" him.  The trial court was therefore justified in finding that Scott had presented no evidence of probable cause sufficient to warrant holding a full evidentiary hearing.  For this reason, we agree with the district court that "[w]hatever the merits of Scott's Due Process contentions, in the abstract, the Court fails to see how they are meaningful in this case." *Scott v. Mitchell*, No. 95CV2037, Order at 6 (N.D. Ohio May 14, 2001).

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court denying the petition for a writ of habeas corpus, and we deny petitioner's motion for a stay of his execution.

(1) If a convict sentenced to death appears to be insane, the warden or the sheriff having custody of the convict, the convict's counsel, or a psychiatrist or psychologist who has examined the convict shall give notice of the apparent insanity to . . .the judge who imposed the sentence upon the convict . . . .

(2) Upon receiving a notice pursuant to division (B)(1) of this section, a judge shall determine, based on the notice and any supporting information, any information submitted by the prosecuting attorney, and the record in the case, including previous hearings and orders, whether probable cause exists to believe that the convict is insane. If the judge finds that probable cause exists to believe that the convict is insane, the judge shall hold a hearing to determine whether the convict is insane. If the judge does not find that probable cause of that nature exists, the judge may dismiss the matter without a hearing.

OHIO REV. CODE ANN. § 2949.28(B). This statute afforded Scott the basic fairness that *Ford* requires; namely, the opportunity to be heard. Scott availed himself of that opportunity when, for example, he presented live testimony from Dr. Douglas Mossman. We have acknowledged that *Ford* allows states "substantial leeway to determine what process best balances the various interests at stake." *Coe*, 209 F.3d at 828 (quotation omitted). A state process under *Ford* may even incorporate "some high threshold showing on behalf of the prisoner . . . to control the number of nonmeritorious or repetitive claims of insanity." 477 U.S. at 417 (plurality opinion). Accordingly, that Ohio denied Scott an evidentiary hearing does not violate due process as enunciated in *Ford*.

Concerning Scott's argument that the Ohio statute impermissibly placed upon him the burden of proving his competency, we do not read *Ford* and *Coe*—the governing cases here—to say that procedural due process requires Ohio's *Ford* statute to set up a burden-shifting paradigm or to assign the initial burden of establishing probable cause to the

Court denied Scott's petition for certiorari; and the Ohio Supreme Court set Scott's execution date for April 17, 2001. Scott then sought an evidentiary hearing in the state court pursuant to OHIO REV. CODE ANN. § 2949.28, claiming that he has been diagnosed as schizophrenic, and that the mental disease has progressed to the point that he is not competent to be executed. The state trial court held a hearing, at which Scott was permitted to present the live testimony of his psychiatrist, but concluded that there was no probable cause to believe that Scott meets the Ohio statute's definition of insanity for purposes of competence to be put to death. The trial court therefore denied Scott's request for a full evidentiary hearing. The Ohio Supreme Court postponed Scott's execution date in order to permit the state court of appeals to consider his appeal of the trial court's judgment; that judgment ultimately was affirmed by the state appellate court, and the Ohio Supreme Court denied Scott's request for a further stay of his execution. The United States Supreme Court declined to hear Scott's challenge to the constitutionality of the Ohio Supreme Court's decision denying a further stay of execution. Scott then filed a "Supplemental Petition for a Writ of Habeas Corpus" seeking to assert his claims that he is not competent to be executed, that the Ohio procedures for determining his competence to be executed are unconstitutional, and that the Eighth Amendment prohibits the execution of one who is severely mentally ill. The district court denied the petition and Scott is now before this court, seeking a stay of his scheduled execution and a reversal of the district court's denial of his petition for a writ of habeas corpus.

## II. Analysis

Scott's petition before the district court claims first that Ohio's statutory procedures for determining his competence to be executed are unconstitutional, and that the Ohio courts' applications of those procedures to him violated his rights under the Eighth Amendment and denied him due process. His petition next claims that *Ford v. Wainwright*, 477 U.S. 399 (1986), is obsolete. Finally, his petition asserts that the

Eighth Amendment prohibits the execution of one who is severely mentally ill. The State argues that this petition is not a supplemental petition and that under the AEDPA it is barred in its entirety unless Scott obtains permission from this court to file a second and successive petition. Scott maintains that none of these claims was ripe when he filed his initial petition for habeas relief in 1996, and therefore the AEDPA bar is not applicable.

We agree with the State that Scott's claim that the Eighth Amendment prohibits the execution of one who is severely mentally ill is barred. Although Scott was not specifically diagnosed as being schizophrenic until well after he filed his initial petition in 1996, his own pleadings make it clear that he had suffered from severe mental illness for years before that petition was filed. Any claim that his execution was prohibited by the Eighth Amendment because he was severely mentally ill was therefore ripe at the time that he filed that petition, but the petition makes no mention of such a claim. Accordingly, we conclude that the district court erred in considering this claim on the merits.

We do not agree with the State, however, that Scott's claim that he was denied his Eighth Amendment and due process rights because Ohio's procedures for determining competence for purposes of execution are unconstitutional is similarly barred. Scott's first execution date preceded his filing of his initial federal habeas petition, and he certainly could have raised his *Ford* claim in that petition. However, the State does not dispute Scott's claim that he is schizophrenic; neither does it dispute his claim that this mental disease is progressive and that its victims do not improve but only get worse. Accordingly, Scott's imminent execution and his claim to a declining mental state lead us to conclude, consistent with our opinion in *Coe v. Bell*, 209 F.3d 815, 824-25 (6th Cir. 2000), that while this claim might not have been ripe six years ago, it is certainly ripe now.

We therefore conclude that we will address on its merits Scott's challenge to the adequacy of the *Ford* standard.

Under the particular facts of this case, Scott had no reason to challenge the adequacy of that standard until he raised his claim that he is not competent to be executed.

We find, however, no error in Judge O'Malley's conclusion that we are bound by *Ford* because "neither the Supreme Court nor the Court of Appeals in this Circuit has ever issued an opinion questioning its vitality." Judge O'Malley is entirely correct, and she is further correct that the Supreme Court's grant of certiorari in *McCarver v. North Carolina*, 121 S. Ct. 1401 (2001), does not affect this result. We therefore conclude that the definition of insanity set out in Ohio's *Ford* statute, OHIO REV. CODE ANN. § 2948.28(A), provides the appropriate standard for determining whether Scott is competent to be executed. That definition is: "that the convict in question does not have the mental capacity to understand the nature of the death penalty and why it was imposed upon the convict." *Id.*

We are left with Scott's claim that Ohio's courts denied him due process by burdening him with proving his competency under *Ford* and by denying him an opportunity for an evidentiary hearing on that question. We find no merit to this claim.

*Ford* provides that "an insane defendant's Eighth Amendment interest in forestalling his execution unless or until he recovers his sanity cannot be deprived without a 'fair hearing.' Indeed, fundamental fairness is the hallmark of the protections afforded by the Due Process Clause." 477 U.S. at 424 (Powell, J., concurring). Applying this principle, we have recognized that "the state is entitled to exercise discretion in creating its own procedures as long as basic fairness is observed." *Coe v. Bell*, 209 F.3d 815, 824-25 (6th Cir. 2000) (internal alterations and citation omitted) (concluding that the procedures followed by the Tennessee courts satisfied the requirements of due process and did not constitute an unreasonable application of *Ford*).

Ohio's *Ford* statute provides: